**BABNICK**

v.

**THE MOUNT ATHOS et al.**

**SCARVELAS et al.**

v.

**TAIT STEVEDORING CO., Inc. et al.**

No. 7661.

United States District Court,
W. D. Washington, S. D.
June 4, 1954.

Levinson & Friedman, Seattle, Wash., for libelant.

Summers, Bucey & Howard, Seattle, Wash., for respondent and claimants.

Grosscup, Ambler, Stephan & Miller, Seattle, Wash., for third party respondent.

BOLDT, District Judge.

By libel in rem libelant sought recovery against the Steamship Mount Athos for personal injuries sustained by libelant aboard the ship as the result of an accident occurring while libelant and others of a stevedore gang were discharging a cargo of ore concentrates at the Tacoma Smelter alongside a dock in the Port of Tacoma. The owners of the ship, pursuant to order of the court under Admiralty Rule 56, impleaded libelant's employer, Tait Stevedoring Company, as third party respondent, claiming full indemnity in the event the vessel or its owners be held liable to libelant for damages. Prior to the trial and following tender of defense, notice of settlement and claim for full indemnity, the shipowner claimants made a lump sum settlement with libelant for his general damages. Expenses totaling $1,868.10 were paid by third party respondent under the Longshoremen's and Harbor Workers' Compensation Act and recovery therefor against claimant shipowners is sought by third party respondent. The case was tried on a pretrial order limited to the claims of the shipowners and the stevedoring company against each other.

In the afternoon of January 26, 1952 and for two days previous thereto the stevedore gang, of which libelant was a member, was engaged in discharging

bulk ore concentrates from the vessel. Unloading in hold No. 2 was accomplished with the aid of a metal scraping blade which was operated by lines from two power winches on the deck above. The main line pulled the scraper toward the square of the hatch in the hold; the haulback line pulled the scraper toward the wings in the hold and into position for another main line pull. The concentrates were lifted from the square of the hatch and out of the ship by a clamshell crane. Both lines were run from the winches down the hatch and into the hold through blocks secured by metal straps to beam clamps or to fittings of the ship. At the time of the accident the haulback line in the hold ran through four blocks, the first of which was strapped to a stanchion and the other three lashed to the skin or frames of the hold in the starboard wing generally opposite the square of the hatch. While libelant was acting as signalman to the winch operator and standing in the square of the hatch one of the haulback line blocks flew across the hold striking libelant causing the injuries complained of.

The several members of the stevedore gang testified with certainty that libelant was struck by a block but their recollection of other details of the accident was much less definite. Some of the longshoremen claimed to have seen what they called a "padeye" lying on top of the pile of concentrates in the hold after Babnick's injury, and some claimed to have seen a place on either a frame or the skin of the ship in the starboard wing where a welding had recently given way. None of the longshoremen claimed to have examined closely such place; the "padeye" was not examined by anyone, nor so much as even picked up by any of the workmen, although it is claimed to have been in full view. The foreman of the stevedore gang, Goore, learned of the accident promptly and summoned an ambulance but he did not go into the hold or make any inspection or investigation of the accident at the scene; neither did his assistant, Pearson. The accident was not reported to the master or other officer of the vessel until evening and after the stevedores had departed from the ship.

It is the contention of respondent stevedoring company that the accident was caused by the failure of the "padeye", a part of the fittings of the ship customarily used for the purpose to which it was being put by the stevedore gang at the time of the accident. The shipowner claimants contend that if in fact a fitting of the ship failed it was not a padeye but a cargo lashing staple not installed, intended or adequate for the purposes for which the stevedores were using it.

The rule of Halcyon Lines v. Haenn Ship Ceiling Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, to the effect that in admiralty cases of this character one joint tortfeasor cannot recover contribution from another joint tortfeasor is not applicable since the shipowner claimants do not seek contribution but claim full indemnity on the ground that negligence of stevedores was the sole cause of the accident. Claimants contend that being presumptively liable to libelant for unseaworthiness of the vessel if failure of a ship's fitting be found, settlement with libelant was justified, reasonable in amount and recovery of indemnity therefor against the negligent stevedore respondent is authorized, citing States Steamship Co. v. Rothschild International Stevedoring Co., 9 Cir., 1953, 205 F.2d 253, 1953 A.M.C. 1399; U. S. v. Rothschild International Stevedoring Co., 9 Cir., 1950, 183 F.2d 181, 1950 A.M.C. 1332; Read v. U. S., 3 Cir., 1952, 201 F.2d 758, 1953 A.M.C. 314; Rich v. U. S., 2 Cir., 1949, 177 F.2d 688, 1949 A.M.C. 2079. The cases cited sustain recovery of indemnity under such circumstances.

The stevedore respondent cites Shannon v. U. S., D.C., 119 F.Supp. 706, 1954 A.M.C. 282 to the effect that stevedores have no duty to inspect ships' fittings to determine their condition before use. Undoubtedly this is the rule with respect of ships' fittings when used by

stevedores in a manner and for purposes the fittings were installed and intended to serve. The rule would have no application to the use by stevedores of fittings in a manner or for purposes beyond their intended uses and capacity. The parties in this case agree that the duty of rigging the unloading gear in hold No. 2 was exclusively that of respondent stevedore. In so far as the shipowners are concerned, such duty would necessarily require that the use of the ship's fittings be within their intended uses and capacity.

In The S. S. Samovar, D.C.N.D.Cal., 1947, 72 F.Supp. 574, libelant stevedore sustained injuries while working in a hold when a padeye on an after bulkhead of a hold gave way releasing a snatch block which struck libelant. Under the evidence before him, Judge Mathes found that the padeyes "were the only devices or fittings on the bulkheads to which a snatch block could be attached", 72 F. Supp. at page 585; that the welding experts "all were virtually unanimous in declaring that one or both of the welds holding the staple to the bulkhead were not good or workmanlike welds by any standard", 72 F.Supp. at page 581; that "there is no doubt that the defective weld was a proximate cause of libelant's injuries", 72 F.Supp. at page 583; that "the 'U' bolt or staple by which the ring was held [was] * * * unfit and unsuitable even for lashing cargo", 72 F.Supp. at page 585; and that failure occurred while (the U-bolt and ring) "was being used for one of the purposes for which it was intended" to be used, 72 F.Supp. at page 587. None of the conditions mentioned is present in the instant case. Except for the stevedores' claim that a staple "gave way" and that there was a place in the starboard wing of the hold where something had been fixed at some time prior to the accident—a place which could not be found by minute inspection a considerable time later—there is no evidence in this case of defective welding, and as to all the other quoted facts found in the Samovar case this Court finds the contrary from the evidence in the present case. It is true that Judge Mathes found "large 'U' bolts were also welded to the heel of the frames at various points, 'for the compound purpose of lashing cargo and helping to take cargo to the side wings.' " 72 F.Supp. at page 581. Undoubtedly the evidence before Judge Mathes justified such finding; however, it was a padeye and ring on a bulkhead that failed in the Samovar case, not one of the U-bolts referred to in the last quotation. Moreover, even if this Court found that the lashing staple in the present case was intended for the same purposes as the U-bolts in the Samovar case, the lashing staple in this case was not being used merely for placing and adjusting cargo incident to lashing, but for the operation of an ore scraper with angles of stress, obstructions and incidents of use which well might have placed the staple under far greater strain than it was designed or intended to bear.

■ The evidence has been considered in the light of the cited authorities, and the following facts are found: On the allegations of the libel and the apparent circumstances, the settlement with libelant by claimants was justified and the amount thereof fair and reasonable considering the injuries and damage for which recovery was sought. There is an important difference between a padeye and a lashing staple. Padeyes are more strongly constructed, more extensively welded and are suitable for moving cargo, operating unloading gear, and heavy duty generally. Lashing staples are U-shaped metal rods welded to a frame in the hold of a ship primarily for the purpose of securing cargo against shifting in transit. The evidence is undisputed that lashing staples were installed in Liberty ships during World War II for the purpose of lashing vehicles and other cargo. Respondent stevedores' foreman testified to personal knowledge of this. There is no evidence or claim that a true padeye was involved in the accident in question. Members of libelant's stevedore gang referred to lashing staples as

"padeyes" and appeared not to know or be concerned with the difference. Considering that no one picked up or even closely looked at the piece of metal claimed to have been lying in plain sight on the concentrate cargo after the accident; that no close examination of either the metal object or the place from which it was supposed to have given way was made by anyone either before or after the accident; and that no report or complaint was made to the ship's officers until a considerable time after the accident; it may well be doubted whether any ship's fitting, whether lashing staple or padeye, actually gave way. It is at least as reasonable a likelihood that a metal strap of the stevedores was not sufficiently lashed to secure the block which came loose and struck libelant. Under the circumstances, the Court is not bound to accept the vague, indefinite, interested and generally unsatisfactory testimony of the stevedores, given two years after the event, particularly in the light of the testimony of marine surveyor Knowles who carefully and minutely examined the frames and skin of the vessel in the starboard wing and could find no evidence of a welding failure. Knowles was a credible witness; his testimony was reasonable and convincing. If Knowles' testimony is accepted and that of the stevedore crew rejected, no other reasonable inference follows but that the cause of the accident was negligence of the stevedores in failing to adequately secure their rigging gear.

▇ It is undisputed that if in fact a failure of a ship's fitting caused the accident it was a lashing staple and not a true padeye. Such fact renders it immaterial, in so far as decision of the case is concerned, as to the location of the lashing staple. Under the view of the evidence most favorable to respondent stevedore, the incident which caused the injury was the failure of a lashing staple securing a rigging block while under use for a purpose not intended, i. e., the working of a scraper in moving bulk ore concentrates. The stevedores' duty to rig the discharging gear would include selecting the means and manner of securing blocks. Such duty imposes the obligation on the stevedores to use ship's fittings within the capacity of their intended purposes, irrespective of how widespread or customarily stevedores may do otherwise. Respondent's foreman Goore testified that he knew the occasion and purposes for which lashing staples were installed in the type of vessel involved. He knew, or should have known, that such fittings were not intended for moving scrapers or other equipment used for heavy duty. He knew that lashing staples were being used otherwise on this job. Goore testified that his assistant, Pearson, made an inspection of the rigging in the hold prior to the accident. It must be assumed Pearson was as well informed as Goore, but the legal effect would be the same in any event. It is suggested that while a lashing staple is not suitable for securing a block through which a main haul line runs, it is suitable for and frequently and widely used for securing blocks on a haulback line. Even though ordinarily a haulback line would be pulled with much less power than a main haul line, the angles of pull in working a scraper, the occurrence of "tight lines" and other incidents of such use require a finding that lashing staples were not installed or intended for such use and present a hazard of failure under such use which is a risk of the stevedore having responsibility for rigging, rather than of the ship's owner or officers.

■■ It is urged that when lashing staples are present in a hold an invitation is extended for their misuse by stevedores. This might well amount to unseaworthiness, as between a stevedore or a seaman and the shipowners, but under the circumstances of this case would not constitute negligence on the part of the shipowners since the stevedore foreman knew lashing staples were installed and intended for the entirely legitimate

purpose of lashing cargo in the hold and there is no evidence that the owners or officers of the Mount Athos knew or should have known of the misuse of lashing staples either generally or in this particular instance. Under such circumstances, neither custom nor practice however widespread would absolve respondent of negligence or charge claimants therewith or acquiescence therein. The limited purpose of lashing staples apparently is widely known and lashing staples are frequently found in Liberty ships. Even if the owners' allowing lashing staples to be and remain in the Mount Athos were considered negligence it would at most be passive, inactive and without harm unless actively used for improper purposes. From the foregoing it follows that if respondent's contention be accepted that the failure of a lashing staple precipitated the accident, the negligence of the stevedores in using a ship's fitting for a purpose for which it was not intended was the sole, proximate, active and moving cause of the accident producing libelant's injuries. Under the doctrine of the cases previously cited claimant shipowners are entitled to recover full indemnity from third party respondent stevedoring company.

Respondent's motion during the argument to reopen the case for the purpose of presenting the testimony of assistant stevedore foreman Pearson in effect has been withdrawn but, in any event, is denied because (1) as indicated, Pearson must be charged with the same knowledge as Goore and Goore's knowledge of the use of lashing staples for a purpose not intended would render respondent liable in any event; and (2) with reasonable diligence the identity, location and testimony of Pearson and what he might know of the matter should have been known to respondents, his former employers, in ample time to have adduced his testimony for the trial.

Findings and decree in accordance herewith may be presented.